UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERIE HARTSIG,                                   Case No. 14-14394

            Plaintiff,                     Avern Cohn
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Stephanie Dawkins Davis
                                                  United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 16)**

**I.    PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On November 15, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Avern Cohn referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for benefits. (Dkt. 4). This matter was reassigned to the undersigned Magistrate Judge on January 5, 2016, pursuant to administrative order. (*See* Text-Only Order dated January 5, 2016). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 15, 16).

B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability and disability insurance benefits on May 8, 2012, alleging disability beginning March 15, 2012. (Dkt. 12-2, Pg ID 49).  Plaintiff's claim was initially disapproved by the Commissioner on July 24, 2012.  *Id*.  Plaintiff requested a hearing and on May 6, 2013, plaintiff appeared, along with her attorney, before Administrative Law Judge (ALJ) Melvyn B. Kalt, who considered the case de novo.  (Dkt. 12-2, Pg ID 62-85).  In a decision dated August 29, 2013, the ALJ found that plaintiff was not disabled.  (Dkt. 12-2, Pg ID 46-57).  Plaintiff requested a review of this decision on October 28, 2013. (Dkt. 12-2, Pg ID 45).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on September 17, 2014, denied plaintiff's request for review. (Dkt. 12-2, Pg ID 39-44); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that the findings of the Commissioner be **AFFIRMED** in part and **REVERSED** in part, and that this matter be **REMANDED** for further proceedings as to plaintiff's mental impairments.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1959 and was 52 years old on the alleged onset date. (Dkt. 12-2, Pg ID 56).  Plaintiff's last date insured was December 31, 2016.  (Dkt. 12-2, Pg ID 51).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  *Id*.  At step two, the ALJ found that plaintiff's carpal tunnel syndrome and DeQuervain's tenosynovitis were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 12-2, Pg ID 52).  The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform light work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in

> 20 CFR 404.1567(b) except she can perform no repeated
> grasping and fingering; she must be able to sit or stand as
> she wishes; and there can be no requirement for writing
> or typing. Further, the claimant is limited to simple, two
> or three step jobs.

(Dkt. 12-2, Pg ID 52). At step four, the ALJ concluded that plaintiff could not

perform her past relevant work as a substance abuse counselor, administrative

assistant, manager, and pizza delivery driver. (Dkt. 12-2, Pg ID 56). At step five,

the ALJ denied plaintiff benefits because plaintiff could perform a significant

number of jobs available in the national economy. (Dkt. 12-2, Pg ID 56-57).

    B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, there is no rationale or discussion of her medical

problems in the ALJ's decision. Plaintiff asserts that the ALJ completely skips

steps two and three and only evaluates her carpal tunnel under the applicable

listings. Plaintiff contends that the ALJ improperly rejects her depression without

any evaluation under the listings, or the "Paragraph B" criteria. Moreover,

plaintiff maintains that the ALJ's decision contains no explanation whatsoever for

the ALJ's conclusions that plaintiff's depression and anxiety are not severe

impairments. While mentioned in passing in the RFC discussion, plaintiff asserts

that the ALJ failed to evaluate her mental impairments at step two and three. And,

the ALJ never evaluated plaintiff's severe impairment of headaches and chronic

pain; indeed, they are never mentioned at step two or three. According to plaintiff,

the ALJ further made significant error in his findings that plaintiff's musculoskeletal impairments are non-severe. (Tr. 13, 14).

Plaintiff contends that the ALJ's cursory approach is a flagrant violation of her due process rights under both SSA regulations as well as the United States Constitution. Again, the ALJ offers no explanation for his assessment that plaintiff's musculoskeletal impairments are non-severe. Rather, according to plaintiff, the ALJ in an attempt to justify the findings states the findings of a CT scan followed by a conclusory statement finding the impairment to be non-severe. *Id*. Plaintiff says that there are voluminous medical records demonstrating her severe limitations which include statements from her treating neurologist Dr. Agner, MD, who states there is "restriction of motion" in the right shoulder. (Tr. 232). Thus, according to plaintiff, there is no reasoned explanation from the ALJ for the rejection of plaintiff's musculoskeletal impairments.

Plaintiff also contends that the ALJ's failure to give specific reasons and explain precisely how those reasons affected the weight accorded to the opinions is a legal error requiring reversal. In *Varley v Secretary of HHS*, 820 F.2d, 777, 779 (6th Cir. 1987), the court stated that the RFC assessment must accurately portray the claimant's physical and mental impairments. Plaintiff says that there is no discussion of the evidence whatsoever in the ALJ decision; indeed, this is a clear case of where an ALJ had a predetermined RFC and simply cherry picks

5

facts to fit that RFC. Plaintiff maintains that the ALJ is so completely vague in his decision on how he came to any conclusions and all factors point to an individual who cannot maintain competitive employment.

Next, plaintiff argues that there is not a scintilla of evidence to support the RFC assessment that she would be capable of work at the light exertional level including work that requires lifting up to 20 pounds, standing, and walking on a sustained basis. The ALJ never factors, or even attempts to factor, plaintiff's severe fatigue, severe pain, need to lie down, and reaching due to her right shoulder issues. According to plaintiff, the ALJ makes no explanation on how he found that plaintiff cannot perform repeated grasping and fingering, nor write or type, but can lift and carry 20 pounds.

Plaintiff points out that the ALJ never rejects any of plaintiff's complaints because they are simply never discussed in the decision. Rather, the ALJ states that he does not find claimant credible; however, the ALJ never discusses or evaluates her subjective complaints under 20 CFR 416.929. The ALJ severely misstates and misquotes plaintiff throughout the decision. Plaintiff acknowledges that while it is not necessary for the ALJ to discuss every factor under 20 CFR 416.929, the ALJ does have a duty to discuss more than the cherry-picked facts he misrepresents throughout his decision. Plaintiff contends that here, the ALJ just makes blanket statements dismissing the complaints of plaintiff and the entire

6

decision is seemingly based on plaintiff's ability to drive and check her e-mail. (Tr. 17). However, the ALJ fails to explain how driving and checking e-mail equates to working a sustained 40-hour work week. Even assuming that plaintiff performed all of these activities as alleged by the ALJ for limited periods, they do not support the conclusions of the ALJ that claimant can work an 8-hour day on a sustained basis. *See Walston v. Gardner*, 381 F2d 580, 585-586 (6th Cir. 1987) (activities performed on an intermittent basis, standing alone, do not establish the ability to perform such tasks on a sustained basis). According to plaintiff, the ALJ provides no specific reasons or analysis for how he reached these limited conclusions.

Plaintiff also argues that there is never a discussion of what weight the ALJ gave to the treating or non-treating medical sources except for one short paragraph where he conveniently gives "significant weight" to the non-examining physician Dr. Khalid "to the extent consistent with the residual functional capacity." (Tr. 17). There is never a discussion of why or how the ALJ gave the RFC determination he gave. In short, plaintiff argues that there is no discussion, no rationale, and zero due process in the ALJ's decision. According to Social Security Ruling 96-8p, the ALJ "must" discuss these issues and is not free to simply ignore the issue. However, according to plaintiff, the ALJ never complied or even attempted to reconcile Social Security Ruling 96-8p with his decision.

The ALJ's RFC of light work failed to "accurately portray the individual's physical and mental impairments" as required under *Varley*.  Plaintiff maintains that when one considers plaintiff's serious physical and mental impairments, work does not exist in significant numbers that she can perform.

> C.   <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner acknowledges that, because this case was decided at the fifth step, she had the burden of coming forward with evidence of other work plaintiff could do, given her impairments.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, the Commissioner also points out that plaintiff retained the ultimate burden of persuasion even on this point.  *Price v. Chater*, 106 F.3d 401 (Table), 1996 WL 742206 at *2 (6th Cir. 1996).  Even after the burden of coming forward with vocational evidence passes to the Commissioner, the Commissioner never assumes any burden of proving the non-existence of limitations alleged by a claimant.  *See* 20 C.F.R. § 404.1560(c)(2); 68 Fed.Reg. 51,153, 51,155, 51,157.  Here, plaintiff challenges the ALJ's finding as to her specific severe impairments, and her residual functional capacity, contending that the ALJ did not properly evaluate either the medical evidence or the credibility of her testimony that she had disabling limitations.  According to the Commissioner, however, she makes no express challenge to the vocational evidence, other than implicitly questioning the

adequacy of the hypotheticals presented to the expert by asserting the ALJ's ultimate residual functional capacity finding was not restrictive (or specific) enough.  Thus, the fundamental question here is whether plaintiff met her burden of showing she had additional, significant functional limitations beyond those the ALJ found.

The Commissioner first urges the Court to reject plaintiff's step two argument.  According to the Commissioner, even if there were an error, so long as the ALJ ultimately considers the cumulative impact of all impairments, severe and non-severe, when assessing a claimant's residual functional capacity, any error at this preliminary stage is deemed harmless.  *Nejat v. Commissioner of Social Security*, 359 Fed.Appx. 574, 576-577 (6th Cir. 2009); *Fisk v. Astrue*, 253 Fed.Appx. 580, 583-584 (6th Cir. 2007).  According to the Commissioner, the ALJ had a sufficient basis for his residual functional capacity assessment and thus, any step two error is harmless.

As to the alleged error at step three, the Commissioner contends that plaintiff fails to present a prima facie case as to how she might possibly meet or equal any relevant listed impairment (or even what listing she might meet or equal). Yet, in order to show reversible error on such issue, she had to point to specific evidence that demonstrates she reasonably could meet or equal every requirement of some specific listing.  *Smith-Johnson v. Commissioner of Social*

9

*Security*, 579 Fed.Appx. 426, 432-436 (6th Cir. 2014).  The Commissioner asserts
that no such showing has been made.

Moreover, the Commissioner maintains that the ALJ's RFC determination is
supported by substantial evidence.  The ALJ found that plaintiff could physically
perform simple, sit-stand, light work which involved only limited use of her
hands, relying primarily on the opinion of Dr. Khalid, a state agency physician
who reviewed plaintiff's treatment records.  (Tr. 17, 59-62).  Dr. Khalid concluded
that plaintiff should be able to do the basic activities required by light work.  (Tr.
61). And, the Commissioner also points out that no treating or examining doctor
ever placed greater ongoing physical limitations on plaintiff.  Thus, the ALJ could
properly rely on such opinion insofar as it was consistent with the totality of the
medical evidence in the record.  *Ealy v. Commissioner of Social Security*, 594 F.3d
504, 514-515 (6th Cir. 2010).  As to plaintiff's mental work limitations, the
Commissioner maintains that the ALJ's finding that she could do simple, two to
three step jobs (Tr. 14, 16-17) was consistent with the treatment reports in the
record, which showed that any functional limitations she had were at most
moderate (typical GAF scores of 53), and which did not document any significant
problems with memory, concentration or attention, or with her ability to interact
with others.  (Tr. 472, 475, 479, 480-481, 483-484, 490, 492, 492-495, 497-498,
513).  The Commissioner also points out that plaintiff fails to give any reason that

the ALJ was obliged to reject Dr. Khalid's opinion and fails to point to any contrary medical opinion that supports her claimed inability to do the sort of work the ALJ found her able to do (or the jobs the vocational expert testified she should be able to do). And, while plaintiff challenges the ALJ's statement that her musculoskeletal impairments were not severe, she fails to note that the medical opinion he relied on treated this problem as severe and considered it when concluding she could do light work in general. (Tr. 59-62). According to the Commissioner, plaintiff fails to explain how, given the ALJ's reliance on such expert medical opinion, the ALJ's own classification of what was severe and not severe affected his ultimate finding as to her capacity for work activities.

As to plaintiff's credibility, the Commissioner submits that the ALJ here had a sufficient basis for discounting her testimony as to the severity of her symptoms. In assessing her claims of disabling symptoms, the Commissioner maintains that the ALJ evaluated the credibility of those claims based on a detailed consideration of relevant evidence in the record. (Tr. 17-21). When evaluating the issue of credibility of plaintiff's claims of disabling symptoms, the ALJ took into account the contemporaneous medical evidence, the lack of adequate medical evidence supporting her most extreme claims, the one uncontradicted medical assessment in the record, and inconsistencies between her activities and her allegedly disabling symptoms. (Tr. 15-17). The Commissioner submits that the

factors considered by the ALJ in assessing (and rejecting) the credibility of plaintiff's claims of disabling pain were generally appropriate and sufficient. *Jones v. Commissioner of Social Security*, 336 F.3d at 476; 20 C.F.R. § 404.1529(a).

While plaintiff contends that her activities, such as driving and using the computer, do not prove that she can work on a full-time basis, the Commissioner says that the ALJ did not base his finding that she could work on a sustained basis, solely on her activities. Rather this was only one factor he took into account. Indeed, the Commissioner points out that the ALJ could properly consider plaintiff's daily activities in determining the credibility of her complaints of pain. *See Brooks v. Social Security Administration*, 430 Fed.Appx. 468, 482-483 (6th Cir. 2011); *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007). Thus, the Commissioner contends that there is no basis for overturning the findings of the ALJ.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

12

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

13

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

16

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

 C. <u>Analysis and Conclusions</u>

  1. Step Two

Plaintiff argues that the ALJ failed to properly evaluate all of her

impairments.  At step two of the sequential evaluation here, the ALJ determined

that plaintiff had the following severe impairments: carpal tunnel syndrome and

DeQuervain's tenosynovitis.  Here, plaintiff appears to be advancing an argument

18

that the ALJ erred in not identifying her mental impairments, headaches, musculoskeletal impairments, and chronic pain as "severe" at step two.

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was "disabled" as defined by the Act...."  *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007).  A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or

handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. *See id.*

It is well established in Sixth Circuit precedent that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  The purpose of step two is "to screen out totally groundless claims."  *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576 (6th Cir. 2009).  If the ALJ continues with the remaining steps, any error at step two is harmless.  Because the ALJ here found the existence of severe impairments, and thus continued to the remaining steps of the sequential evaluation, any error at step two in failing to find plaintiff's other impairments were severe is harmless.

        2.    Credibility/Physical RFC

Plaintiff also claims that the ALJ's credibility analysis is flawed and is not based on a proper characterization of record evidence.  However, credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d

589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case

21

record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The undersigned agrees with the Commissioner that the ALJ's decision regarding plaintiff's credibility, the impact of the credible limitations caused by pain, and the ultimate RFC findings are supported by substantial evidence. The medical evidence does not support the extensive limitations claimed by plaintiff. The spinal MRI performed on April 12, 2012 showed a "tiny left paracentral disc protrusion" and a "mild disc bulge." (Dkt. 12-7, Pg ID 253). The head CT performed on March 6, 2012 revealed a "normal study." (Dkt. 12-7, Pg ID 254). The brain MRI performed on April 9, 2013 was also within normal limits. (Dkt. 12-9, Pg ID 589). The shoulder x-ray from March 6, 2012 showed a "negative study." (Dkt. 12-7, Pg ID 255). The June 2012 shoulder MRI found possible bursitis and minimal degenerative changes in the AC joint. (Dkt. 12-9, Pg ID

583). In April 2011, plaintiff had an abdominal ultrasound, which noted no "gross lesion detected." (Dkt. 12-7, Pg ID 256). The August 2011 chest x-ray showed "very mild COPD, but with no acute pulmonary disease seen and no interval change." (Dkt. 12-7, Pg ID 257). Plaintiff's April 2012 head and neck CT angiography revealed an "unremarkable extracranial carotid CTA" and "no evidence of stenosis." (Dkt. 12-7, Pg ID 265, 266). The elbow x-ray taken on June 16, 2012 was negative. (Dkt. 12-7, Pg ID 446). On July 28, 2012, plaintiff had an "unremarkable" MRI of her right humerus. (Dkt. 12-9, Pg ID 582). In December 2012, plaintiff had an abdominal/pelvis CT performed, which appeared entirely normal, except that degenerative changes of the spine were noted. (Dkt. 12-7, Pg ID 469-470). These objective test results, along with the examinations performed by plaintiff's treating physicians revealed minor symptoms and little evidence of significant impairment. (Dkt. 12-2, Pg ID 54). The ALJ also properly pointed out that plaintiff was able to drive 10 hours per week, read, do gardening, and check her email. These factors support the ALJ's credibility determination.

Additionally, plaintiff only received conservative treatment during the period at issue, which suggests that her limitations were not as disabling as she claimed. Plaintiff used wrist-splints, had pain injections, and underwent some physical therapy during the relevant period and that treatment does not undermine the ALJ's cited inconsistencies. *See Villarreal v. Sec'y of Health & Human Servs.*,

818 F.2d 461, 463 (6th Cir. 1987) (finding it reasonable for fact finder to rely on plaintiff's "conservative treatment" in assessing credibility); SSR 96-7p, at *7 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."). The undersigned agrees with the Commissioner that substantial evidence supports the ALJ's credibility analysis, even if there is evidence to support another conclusion.

The undersigned also concludes that, to the extent necessary, the ALJ also discussed the regulatory factors under 20 C.F.R. § 404.1529(c) and 416.929(c). Specifically, the ALJ noted plaintiff's alleged daily activities, symptoms and limitations, medications, and treatment history along with the objective clinical findings, including a multitude of x-rays, MRIs and CTs. Thus, the undersigned finds no error in this regard.

### 3.    Mental Impairment

Plaintiff did not indicate in her application that she suffered from any mental impairments. As she testified at the hearing, she began treating for depression and anxiety in 2013, well after the date of her application. Notably, Dr. Khalid's review of the medical records, dated July 24, 2012, occurred before plaintiff began treating for any mental impairments. As he noted, there was no psychiatric treatment or medications in the record at the time of his review. (Dkt. 12-3, Pg ID 98). At the time of the hearing, however, it was clear that plaintiff

24

claimed to have a mental impairment and had submitted medical records in support of that impairment before the hearing.

Under 20 C.F.R. § 404.1520a, which governs the evaluation of mental impairment, an ALJ is no longer required to complete the Psychiatric Review Technique Form (PRTF), but must include "pertinent findings and conclusions based on the technique" in the decision. *See* 20 C.F.R. § 416.920a(e). The ALJ undertook no such assessment whatsoever in his opinion. This is an error which must be remedied on remand. *See e.g.*, *Oliver v. Comm'r of Soc. Sec.*, 2015 WL 4661902, at *7 (N.D. Ohio Aug. 5, 2015) (Where the ALJ used the special technique and rated the claimant's functioning in the four broad functional areas, the ALJ's finding that the claimant's mental impairments were non-severe complied with the required application of the special technique.); *see also* SSR 968p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

Unlike other cases where such an error has been found harmless, there is no opinion in this record assessing the severity of plaintiff's mental limitations and the resulting functional limitations. *See e.g.*, *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009). In *Rabbers*, the Sixth Circuit found the failure

25

to use the special technique at step two was harmless because the ALJ ultimately concluded that plaintiff had a severe mental impairment and proceeded to step three. Here, the ALJ did not so conclude. The court also concluded that even if the ALJ had made specific findings regarding the B criteria, the same conclusion would have been reached at step three. However, in *Rabbers*, the court's analysis of the B Criteria and ultimate determination that the error was harmless was primarily based on the opinions of several physicians who had evaluated the plaintiff's mental impairments under the special technique. *Id*. at 658-660. There is no such evidence in this record. Thus, the Court finds *Rabbers* and similar cases to be distinguishable and inapplicable. *See also*, *Taylor v. Comm'r of Soc. Sec*., 2013 WL 5348818, at *18 (E.D. Mich. Sept. 24, 2013) (*Rabbers* cautioned that a court should only find a failure to examine the B criteria harmless where "concrete factual and medical evidence" is "apparent in the record" and shows that even if the ALJ had made the required findings "the ALJ *would have* found the claimant not disabled.") (Emphasis supplied in *Taylor*). Just as in *Taylor*, this record "contain[s] conflicting or inconclusive evidence relating to the B criteria," such that the ALJ, rather than this court, should be the first to competently explain" how the record, taken as a whole, does (or does not) support" plaintiff's mental impairments and resulting limitations. *Id*. at *18, quoting *Rabbers*, 582 F.3d at 657.

26

Indeed, in this case, there is no consulting physician opinion as to plaintiff's mental impairments and no PRTF in the record. Simply put, there is no treating physician or any other consulting or examining physician who offered any opinion regarding plaintiff's functional limitations as to her mental impairment. Thus, we are left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec*., 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between

27

properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not

28

free to set his own expertise against that of a physician who presents competent evidence."). Thus, in the view of the undersigned, this matter must be remanded so that the ALJ can obtain the opinion of a medical advisor to assess the severity of the plaintiff's mental impairments and any resulting functional limitations, as well as to conduct the assessment required by 20 C.F.R. § 416.920a(e).

### 4. Treating Physician

Plaintiff has not identified any medical opinions, treating or otherwise, that the ALJ failed to appropriately consider. Thus, the undersigned considers this argument waived. *See McPherson v. Kelsey*, 125 F.3d at 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that the findings of the Commissioner be **AFFIRMED** in part and **REVERSED** in part, and that this matter be **REMANDED** for further proceedings as to plaintiff's mental impairments.

29

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

30

Date: March 2, 2016                    s/Stephanie Dawkins Davis
                                       Stephanie Dawkins Davis
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 2, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                       s/Tammy Hallwood
                                       Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov